## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

**ROBERT PONTE,**

      **Plaintiff,**

  **vs.**

**CHASE BANK USA, N.A., as an Enterprise
and by its Managing Officers and Board of
Directors, JAMES DIMON, CEO, JOHN DOE 1
through N; MARY JANE M. ELLIOTT, P.C.;
and PORTFOLIO RECOVERY ASSOCIATES
L.L.C.**

      **Defendants.**                   **Jury Demand**

**ROBERT F. PONTE  (P-23218)
Plaintiff, In Pro Per
220 W. Middle Street
Chelsea, Michigan  48118
(734) 475-9191**

## COMPLAINT WITH JURY  DEMAND

1.  Breach of Implied Covenant of Good Faith and Fair Dealing  .  .  .  8
2.  RICO, 18 USC § 1961, et seq  .  .  .  9
3.  TILA, 15 USC § 1601, et seq  .  .  .  12
4.  Michigan Collection Practices Act, MCL 445.251, et seq  .  .  .  13
5.  Michigan Consumer Protection Act, MCL 445.901, et seq  .  .  .  14
6.  FDCPA, 15 USC § 1692, et seq  .  .  .  16
7.  Michigan Consumer Protection Act, MCL 445.901, et seq  .  .  .  17
Jury Demand  .  .  .  18

Plaintiff Robert Ponte (Ponte), complains against the above named Defendants, as

follows:

**Nature of the Case**

1.     This action seeks to remedy a carefully-calculated effort by Defendant Chase Bank USA, N.A. (Chase) to force customers to pay higher interest rates and amounts than they bargained for in connection with their loan agreements with Chase.  In effect, Chase was "calling the loans," *i.e.*, requiring customers to suddenly pay all outstanding balances in full or otherwise be subjected to significantly higher interest rates under new and unfair terms.

2.     Ponte is one of hundreds of thousands of Chase credit card customers whom Chase offered separate loans under terms that were in material respects distinct from the credit card terms.

3.     Chase initiated "check loans" from time to time by sending its credit card customers, including Ponte, "blank checks".  Chase solicited customers to opt to use these checks, in amounts not to exceed the credit limit of their credit cards, and in so doing accept the terms of the loan offered by Chase.

4.     Although these check loans are governed by the cardholder agreement in some respects, the terms for repayment of the loans were different from the terms for repayment of other credit card debt.  Chase represented to customers, including Ponte, that the check loans will be subject to drastically lower interest rates -- ranging from 2.99% to 4.99% APR -- than credit card debt.  Chase promised that the low interest rates on the check loans would remain fixed "for the life of the loan," that is, "until the balance is paid off".

5.     Beginning in November 2008, Chase posted customers with outstanding check loan balances "notices", stating that their minimum monthly repayment on the check loans would be raised from two-percent (2%) to five-percent (5%).

6.     These new terms were not previously disclosed in any form to Chase's customers.

7.     On information and belief, these changes were only imposed on Chase customers with low interest, "life of the loan" check loans, including Ponte.

8.     Although the "notice" stated that the customer's interest rates "will not be impacted by these changes", the new monthly charge drastically shortened the life of

the loan, so that it effectively increased the customer's borrowing costs, to replace the forced prepaid loan balance at a higher interest rate, frustrating the customer's, including Ponte's, prudent incentive to lock in the credit limit at a favorable rate.

9.    The "notices" further stated that customers must pay off their entire loan balances in full immediately or be subject to the new and unfair terms.

10.    In response to customer complaints, including Ponte's (see the attached letter confirming his billing error protest), Chase then tried to coerce customers, including Ponte, to pay their loan balances in full, immediately, to avoid imposition of the higher interest rates and new terms, or, alternatively, to transfer their loan balances to accounts with higher and variable interest rates.

11.    Chase unilaterally and unfairly changed the terms of the loans, in an attempt to unfairly accelerate repayment of outstanding balances and to increase immediate revenues.

12.    As a result Ponte, who was unable to afford to replace Chase's check loan with other borrowing or to renew it at a higher rate of repayment, was damaged, in his credit, by the resulting default of his loan.

13.    Chase failed to fulfill the promises made to its customers and contravened its representations, including the very representations that induced customers, including Ponte, to incur debt, and to place it with Chase, thereby breaching its loan agreements with customers and violating common and statutory law prohibiting false advertising and unfair and fraudulent business practices.

14.    Chase also failed to respond in writing to Ponte's written claim to billing error, in violation of the Truth in Lending Act (TILA), 15 USC § 1666(a)(1)(A).

15.    Ponte seeks actual damages, including suffering fright, shock, humiliation, mortification and mental anxiety, financial loss, restitution, disgorgement of profits, costs of suit, declaratory relief, and injunctive relief to stop Chase from overcharging its customers, including Ponte.

**Jurisdiction and Venue**

16.   This Court has personal jurisdiction over Chase because a substantial portion of the wrongdoing alleged in this *Complaint* took place in this state, Chase is authorized to do business here, Chase has sufficient minimum contacts with this state, and/or Chase otherwise intentionally avails itself of markets in this state through the promotion, marketing and sale of its products and services in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

17.   Venue is proper in this District pursuant to 28 USC § 1391(a) because Plaintiff Ponte resides in the City of Chelsea, Washtenaw County, Michigan; because Chase has hundreds, if not thousands, of customers in the Eastern District; because Chase has received substantial fees from Michigan consumers who hold accounts here; and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

18.   Chase is a national banking association, headquartered in New York, New York. Chase is a wholly-owned subsidiary of JP Morgan Chase & Co. (JPM), a global financial services firm.  Chase is the legal entity for JPM's credit card business.

19.   Chase is one of the largest credit card companies in the United States, with at least hundreds of thousands of credit card customers throughout the United States and at least thousands of credit card customers throughout the State of Michigan.

**General Allegations**

20.   Like many other credit card companies over the past decade, Chase offered its credit card customers a variety of promotional loan offers, whereby customers could borrow funds to pay off their credit card balances (by transferring balances to accounts with lower interest rates) or to use for other purposes.

21.   Several of Chase's promotional loan offers promised loans at low APRs or even 0% APR, but had a limited duration -- usually between 6 months and a year -- with the applicable interest rate increasing thereafter.

4

22.     Perhaps 7 years ago Chase began to offer its customers, including Ponte, loans with low interest rates which it represented would last "until the balance is paid off". These loan offers were initiated through "blank checks" that Chase sent from time to time to its customers, including Ponte. At pertinent times, Chase offered such loans at interest rates ranging from 2.99% to 4.99% APR for the life of the loan.

23.     In some respects, these loan offers are subject to Chase's "Cardmember Agreement," which gives Chase the right, in the event of default, to revoke the "life of the loan" offer, but *does not* give Chase the right to change the applicable interest rate for these "life of the loan" loans absent a default.

24.     Chase made the following material representations in connection with offering customers these check loans: Wouldn't it be nice if you could write a check now and pay it off later -- just like a credit card? Because of the good credit on your Chase MasterCard account ending in XXXX, now you can. We've attached checks you can write out for any amount up to the unused portion of your available credit. Or use check numbers YYY and ZZZ to get a low promotional 2.99% fixed APR ***until the balance is paid off.**\** It's like giving yourself a fixed-rate loan with no application and no waiting around for approvals.

25.     Nowhere in the letters presenting these "life of the loan" offers (including in the fine print) has Chase ever indicated in any way that the low interest rate would or could be increased, for borrowers who were not in default, including Ponte.

26.     On information and belief, many thousands of Chase credit card customers (Borrower(s)), in Michigan and throughout the United States, have entered into these "life of the loan" check loan agreements with Chase during the relevant time period.

27.     Not satisfied with its return on these low interest loans, and in an effort to squeeze additional funds from its customers, including Ponte, Chase decided to unilaterally and unfairly change the terms of Borrowers' loans. These changes were intended to, and had the effect of, forcing Borrowers to immediately pay their loan balances in full, increasing the

5

applicable interest rates for Borrowers, and/or forcing Borrowers to transfer their existing loan balances to accounts with higher and variable interest rates and/or forcing Borrowers, including Ponte, who were unable to borrow elsewhere, to default their check loans.

28.   On information and belief, beginning in November 2008, Chase mailed "notices" to each Borrower with an outstanding check loan balance, notifying them of the following changes to the terms of their loan agreements: each Borrower's minimum payment (that is, the amount they need to pay each month to not be in default) was increased by 150% -- from 2% to 5% of the ending balance on their monthly statement.

29.   These new terms were not previously disclosed to Borrowers, either in Chase's offer letters sent to Borrowers or otherwise.

30.   On information and belief, these changes were only imposed on Chase customers with low interest, "life of the loan" check loans.

31.   Ponte has been a Chase, and/or BankOne subsidiary, credit card customer for perhaps 9 years or more.  During that time, he has received numerous promotional loan offers from Chase.

32.   In or about February 2005, based on Chase's representations, Ponte accepted an offer from Chase for a check loan at an interest rate of 2.99% APR "for the life of the loan".  The amount of the check loan was $30,300.00.

33.   The loan offer did not indicate in any way that Ponte's interest rate would or could be increased, if Ponte was not in default.

34.   After Ponte accepted this loan offer, until he received Chase's monthly statement increasing its minimum payment by 150%, Ponte made regular monthly payments and had not been in default.

35.   On information and belief, in or about November 2008, some Borrowers began to receive a "notice" from Chase, along with its monthly billing statement, that indicated that Chase was increasing its minimum monthly payment from 2% to 5% of the outstanding

balance. The "notice" further stated that: "Important: Your APRs will not be impacted by these changes." The "notice" further stated that the changes would apply "unless you notify us that you wish to close your account within 30 days … and at the same time, you pay your outstanding balance in full."

36.    In or about September 2009 Chase revealed to Ponte its monthly statement newly increasing his minimum payment by 150% -- from 2% to 5% of the balance remaining after receipt of his previous month's full minimum payment.

37.    Ponte lacked the financial resources to afford Chase's unfair increase in minimum payment over the life of his check loan.

38.    Shortly after reviewing his September 2009 monthly billing statement, Ponte called Chase to ask about the changes to his bill. Ponte spoke with a Chase customer service representative, who stated that Ponte would be subjected to these changes going forward unless he either: (1) paid off his loan balance in full; or (2) agreed to transfer his entire loan balance to an interest rate of 7.99% APR.

39.    On information and belief, a Chase customer service representative's full script to Borrowers, was to state that the Borrower was subject to these changes going forward unless he either: (1) paid off his loan balance in full; or (2) agreed to transfer his entire loan balance to a new account *with a limited duration* interest rate of 7.99% APR, *with Chase having the right to increase that interest rate at the end of the limited duration period.*

40.    Ponte confirmed Chase's billing error he had verbally alleged, by his written letter protesting Chase's billing error (see attached).

41.    Chase never responded, in writing or otherwise, to Ponte's letter protesting Chase's billing error.

42.    The United States District Court for the Northern District of California denied, in part, Chase's *Motion for Summary Disposition* and approved a class action for Borrowers allegedly victimized by Chase's unfair withdrawal of agreed contractual benefit to

7

customers. *Michael E. Moore v Chase Bank, USA*, US Judicial Panel on Multidistrict Litigation MDL #2032, N CA Case # 3:09-md-02032.

43.　Ponte timely and properly, in full accord with the opt-out instructions provided to him, opted out of the class action, thereby maintaining his right to personally proceed against Chase.  (See Ponte's attached opt-out declaration.)

44.　As a direct and proximate result of Chase's actions above, Ponte has suffered actual damages, including but not limited to, damage to his business and community reputation, mental distress, aggravation, humiliation, embarrassment and mortification

### First Cause of Action

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

45.　Ponte incorporates by reference all preceding paragraphs.

46.　By common law, a covenant of good faith and fair dealing is implied into every contract.

47.　Chase violated this covenant of good faith and fair dealing in its loan agreements with Ponte by: (a) unilaterally imposing unfair and unconscionable changes to the interest rates and other loan terms; (b) coercing and/or trying to coerce Ponte to pay his entire loan balances in full prematurely; and (c) coercing and/or trying to coerce Ponte to transfer his loan balance to higher and variable interest rates.

48.　Ponte performed all, or substantially all, of the significant duties required of him by his loan agreements with Chase.

49.　The conditions required for Chase's performance under the loan agreements had occurred.

50.　Chase unfairly interfered with the right of Ponte to receive the benefits under his loan agreements with Chase.

51.　As a proximate result of Chase's breach of the implied covenant of good faith and fair dealing, Ponte has suffered actual damages.

8

**Wherefore**, Ponte prays for judgment against Chase as follows:

    a.   Actual damages above $75,000;

    b.   Exemplary damages;

    c.   Punitive damages;

    d.   Costs, interest and attorney fees;

    e.   Such other and further relief as this Court deems just and proper.

**Second Cause of Action**

**(RICO, 18 USC § 1961, et seq.)**

52.    Ponte incorporates by reference all preceding paragraphs.

53.    Ponte is a "person" within the meaning of 18 USC § 1961 as he is an individual capable of holding a legal or beneficial interest in property.

54.    Chase is a "person" within the meaning of 18 USC § 1961 as it is an individual capable of holding a legal or beneficial interest in property.

55.    Chase is also a legal entity, a partnership or company, functioning as an organized business entity constituting an "enterprise" within the meaning of 18 USC § 1961.

56.    Chase is engaged in interstate commerce.

57.    Chase received income in the form of proceeds from the collection of debts by a pattern of racketeering activity that has the same or similar purposes, results, participants, victims, or methods of commission supporting the conclusion that the criminal acts are ordered or arranged, in the form of multiple and related violations of 18 USC §§ 1341, 1351, and 1352, and MCL 750.213 occurring within the past several years, including September 2009, and continuing through the present.

**Violation of 18 USC § 1341 (Mail Fraud)**

    a.   Chase, the "person", by its active managing officers and board of directors (Chase Management), and Chase, the "enterprise" (Chase Enterprise) engaged in a scheme to deprive Borrowers, including Ponte, of money, through written promises made to Borrowers,

including Ponte, in order to convince Borrowers, including Ponte, to borrow at rates fixed "for the life of the loan", that it then unilaterally revoked.

      b.   In order to carry out this scheme, Chase Management and Chase Enterprise made use of the mail by mailing fraudulent and untrue marketing literature to Borrowers, including Ponte, and by marketing loans by mail, which contained false and misleading information such as offers to borrow at rates fixed "for the life of the loan".

      c.   Chase Management and Chase Enterprise intended to deprive Borrowers, including Ponte, of their money.

      d.   Chase Management and Chase Enterprise did deprive Borrowers, including Ponte, of their money, by payments Borrowers, including Ponte, made on these fraudulent loans.

### Violation of 18 USC § 1951 (Interference with Commerce by Threat)

Chase interfered with the movement of any article or commodity in commerce, by extortion, or attempted or conspired so to do, where, pursuant to § 1951(b)(2), the term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened fear, or under color of official right.

### Violation of 18 USC § 1952 (Use of Facility in Aid of Racketeering Enterprise)

Chase used a facility in interstate commerce with the intent deliver the gains of unlawful activity, where, pursuant to § 1952(b)(2), the term "unlawful activity" means extortion in violation of the laws of the State in which committed.  In violation of MCL 750.213, Chase orally or by any written or printed communication maliciously threaten harm to the property of Ponte with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will.

58.    Chase Management, including James Dimon, Chief Executive Officer, and assistant managers and board members John Doe 1 through N, used or invested the

10

proceeds derived from the pattern of racketeering activity directly or indirectly in the operation of Chase Enterprise, consisting of payments by Borrowers, including Ponte, and Chase Management continues to use or invest the proceeds in the operation of Chase Enterprise, so that they may continue to engage in the illegal and fraudulent activities set forth above.

59.    Chase Enterprise had been receiving proceeds derived from payments Borrowers, including Ponte, made on these fraudulent loans through its pattern of racketeering activity for a period of several months prior to unilaterally revoking Ponte's contractual right to borrow at rates fixed "for the life of the loan".

60.    Chase Management's use of proceeds gained from the pattern of racketeering activity allowed them to operate Chase enterprise, causing Ponte damage, including, but not limited to, use or investment injury, as described above.

61.    Chase Management used and continues to use Chase Enterprise as the vehicle through which unlawful activity is committed, as described above.

62.    Chase Management repeatedly, on several occasions, conspired and collaborated with Chase Enterprise in the pursuit of a fraudulent and criminal enterprise (on several occasions unilaterally revoking Borrowers', including Ponte's, contractual right to borrow at rates fixed "for the life of the loan") which had as a main characteristic and objective the systematic violation of Michigan criminal fraud statutes, by the use of means and instrumentalities of interstate commerce, including the mails.

63.    Chase Management actively conspired, and, on multiple occasions, acted in concert with Chase Enterprise, using the instrumentality of interstate commerce such as the mail, to, as their objective, fraudulently conceal from consumers throughout the entire United States the true cost of borrowing in violation of consumer laws and the common law throughout the United States.

64.    The above described activities by Chase Management constitute a pattern of

racketeering activities within the purview of 18 USC § 1961, et seq., in that the above facts describe more than two acts of racketeering activity (including several, varied in precise detail, generally similar schemes to violate 18 USC § 1341 (Mail Fraud)) by use of instrumentalities of interstate commerce, such as the mails.

65.     As a direct and proximate result of said pattern of racketeering activity, Chase Management and Chase Enterprise used the money obtained from Borrowers, including Ponte, and/or the proceeds thereof, to operate an enterprise engaged in interstate commerce, specifically including using money and/or property so obtained for the further operation of Chase Enterprise.

66.     As a direct and proximate result of Chase Management's violation of 18 USC §§ 1962(a) and (c), Borrowers, including Ponte, were injured by the loss of money and/or property as described above, entitling Ponte to treble damages and actual attorney fees pursuant to 18 USC § 1964(c).

**Wherefore**, Ponte prays for judgment against Chase and Chase Management, including James Dimon, Chief Executive Officer, and assistant managers and board members John Doe 1 through N, as follows:

    a.    Actual damages;

    b.    Use or investment injury damages pursuant to 18 USC § 1962(a)-(c);

    c.    Costs, interest and actual attorney fees pursuant to 18 USC § 1964(c);

    d.     Treble damages pursuant to 18 USC § 1964(c);

    e.    Such other and further relief as this Court deems just and proper.

**Third Cause of Action**

**(TILA, 15 USC § 1601, et seq.)**

67.     Ponte incorporates by reference all preceding paragraphs.

68.     Because the transactions described herein are covered by TILA, Chase was required to make the disclosures required under TILA.

69.     Chase failed to comply with the disclosure requirements of TILA.

70.     By failing to provide accurate and clear and conspicuous disclosures under TILA, including but not limited to rate change information, Chase failed to properly or accurately disclose the APR and the terms and conditions it was obligating itself to in the agreements and solicitations it made to Ponte to accept the subject credit agreement.

71.     Moreover Chase failed, at any time, to respond in writing to Ponte's written claim to billing error, in violation of the TILA, 15 USC § 1666(a)(1)(A).

72.     Ponte is entitled to the full measure of remedies available pursuant to TILA, including but not limited to, statutory damages, actual damages, attorney fees and costs of suit.

**Wherefore**, Ponte prays for judgment against Chase as follows:

a.     A declaratory judgment that Chase has violated the TILA;

b.     An award of actual damages in whatever amount Ponte is found to be entitled to pursuant to 15 USC § 1640(a)(1);

c.     An award of statutory damages in the amount of twice the finance charge not to exceed $5,000 in accordance with 15 USC § 1640(a)(2);

d.     An award of costs and reasonable attorneys fees in accordance with 15 USC § 1640(a)(3);

e.     Equitable relief, including but not limited to, rescission of the subject finance contract;

f.     Such other and further relief as this Court deems appropriate.

**Fourth Cause of Action**

**(Michigan Collection Practices Act (MDCPA), MCL 445.251, et seq.)**

73.     Ponte incorporates by reference all preceding paragraphs.

74.     Ponte is a "consumer" or "debtor" within the meaning of MCL 445.251(d).

75.     Chase is a "regulated person" within the meaning of MCL 445.251(b) and (e).

76.    In attempting to collect payment on the alleged debt, Chase engaged in the following unfair and deceptive acts, methods or practices:

      a.    Misrepresenting the legal status of the alleged debt, in violation of MCL 445.252(f)(i) and (iii);

      b.    Making inaccurate, misleading, untrue, or deceptive statement(s) or claim(s) in a communication to collect a debt, in violation of MCL 445.252(e);

      c.    Failing to implement procedures designed to prevent violations of MCL 445.252 by its employees, in violation of MCL 445.252(q);

      d.    Such other and further acts and practices as may be discovered through further investigation and discovery.

77.    The foregoing acts and practices by Chase were wilful.

78.    As a result of Chase's actions above, Ponte is entitled to actual damages, statutory damages, treble damages and attorney fees as provided in the Michigan Collection Practices Act, specifically, MCL 445.257(2).

**Wherefore**, Ponte prays for judgment against Chase as follows:

      a.    Actual damages in whatever amount above $75,000 Ponte is found to be entitled, plus interest, costs and attorney fees;

      b.    Exemplary damages;

      c.    Declaratory judgment that the above described methods, acts and/or practices are unlawful under MCL 445.252;

      d.    Permanently enjoining Chase from engaging in the above described methods, acts and/or practices;

      e.    Such other and further relief as this Court deems just and proper.

**Fifth Cause of Action**

**(Michigan Consumer Protection Act (MCPA), MCL 445.901, et seq.)**

79.    Ponte incorporates by reference all preceding paragraphs.

14

80.    Ponte is a "person" as defined in the MCPA, MCL 445.902(c).

81.    The transactions complained of herein constitute "trade or commerce" as defined in the MCPA, MCL 445.902(d).

82.    In the course of the transactions which are the subject of this lawsuit, Chase engaged in following unfair and deceptive methods, acts or practices:

      a.    Causing the probability of confusion or of misunderstanding as to the legal rights, obligations or remedies of a party to a transaction, in violation of MCL 445.903(n);

      b.    Failing to provide promised benefits, including but not limited to, benefits arising by operation of law, in violation of MCL 445.903(c);

      c.    Violations of state and federal statutes as alleged in this *Complaint*;

      d.    Failing to disclose and/or misrepresenting a material fact, in violation of MCL 445.903(s), (bb), (cc);

      e.    Such other and further violations as may be determined upon further investigation and discovery.

83.    The above described conduct violated the MCPA, specifically but not limited to MCL 445.903 and the sub-paragraphs contained therein.

84.    The aforesaid violations were not due to a bona fide error, inasmuch as Chase failed to have any procedures in place designed to prevent the aforesaid violations and, further, upon information and belief, Chase has engaged in the same or similar acts and practices in connection with transactions with other consumers.

85.    As a result of Chase's actions above Ponte has suffered a loss within the meaning of the MCPA and is also entitled to statutory damages and attorney fees as provided in the MCPA, specifically, MCL 445.911.

**Wherefore**, Ponte prays for judgment against Chase as follows:

      a.    Actual damages in whatever amount above $75,000 Ponte is found to be entitled, plus interest, costs and attorney fees;

b.   Exemplary damages;

c.   Declaratory judgment that the above described methods, acts and/or practices are unlawful under MCL 445.903;

d.   Permanently enjoining Chase from engaging in the above described methods, acts and/or practices;

e.   Such other and further relief as this Court deems just and proper.

**Sixth Cause of Action**

**(Fair Debt Collection Practices Act (FDCPA), 15 USC 1692, et seq.)**

86.   Ponte incorporates by reference all preceding paragraphs.

87.   Ponte is a "consumer" of a "debt" as those terms are defined in the FDCPA.

88.   Defendant, Mary Jane M. Elliott, P.C. (Elliott), was and is a "debt collector", for Chase and/or Portfolio Recovery Associates, L.L.C. (Portfolio): for Elliott's acts Portfolio is liable under the principles of agency.

89.   Defendant, Elliott, violated the FDCPA including but, not limited to:

a.   Trying to collect an amount not "authorized by the agreement creating the debt", in violation of 15 USC § 1692f(1)

b.   Falsely representing the amount of the debt, in violation of 15 USC § 1629e(2)(A);

c.   Using any false, deceptive, or misleading representation or means in connection with the collection of any debt, in violation of 15 USC § 1629e;

d.   Engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of 15 USC § 1629d;

e.   Such other and further violations as may be determined through further investigation and discovery.

16

**Wherefore**, Ponte prays that this Honorable Court enter Judgment against Elliott and Portfolio for:

      a.   Actual damages pursuant to 15 USC § 1692k(a)(1);

      b.   Statutory damages pursuant to 15 USC 1692k(a)(2)(A);

      c.   Costs and reasonable attorney fees pursuant to 15 USC 1692k(a)(3);

      d.   A declaration that Elliott's practices violate the FDCPA; and

      e.   Such other and further relief as this Court deems just and proper.

**Seventh Cause of Action**

**(Michigan Consumer Protection Act (MCPA), MCL 445.901, et seq.)**

90     Ponte incorporates by reference all preceding paragraphs.

91.    The transactions complained of herein constitute "trade or commerce" as defined in the MCPA, MCL 445.902(d).

92.    In the course of the transactions which are the subject of this lawsuit, Elliott engaged in the following unfair and deceptive methods, acts or practices:

      a.   Causing the probability of confusion or of misunderstanding as to the legal rights, obligations or remedies of a party to a transaction, in violation of MCL 445.903(n);

      b.   Failing to provide promised benefits, including but not limited to, benefits arising by operation of law, in violation of MCL 445.903(c);

      c.   Violations of state and federal statutes as alleged in this *Complaint*;

      d.   Failing to disclose and/or misrepresenting a material fact, in violation of MCL 445.903(s), (bb), (cc);

      e.   Such other and further violations as may be determined upon further investigation and discovery.

93.    The above described conduct violated the MCPA, specifically but not limited to MCL 445.903 and the sub-paragraphs contained therein.

94.    The aforesaid violations were not due to a bona fide error, inasmuch as

17

Elliott failed to have any procedures in place designed to prevent the aforesaid violations and, further, upon information and belief, Elliott has engaged in the same or similar acts and practices in connection with transactions with other consumers.

95.    As a result of Elliott's actions above Ponte has suffered a loss within the meaning of the MCPA and is also entitled to statutory damages and attorney fees as provided in the MCPA, specifically, MCL 445.911.

**Wherefore**, Ponte prays for judgment against Elliott and Portfolio as follows:

a.    Actual damages in whatever amount above $75,000 Ponte is found to be entitled, plus interest, costs and attorney fees;

b.    Exemplary damages;

c.    Declaratory judgment that the above described methods, acts and/or practices are unlawful under MCL 445.903;

d.    Permanently enjoining Elliott from engaging in the above described methods, acts and/or practices;

e.    Such other and further relief as this Court deems just and proper.

**Jury Demand**

Pursuant to FRCivP 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated:   September 4, 2012.

Robert Ponte
Plaintiff, Pro Per

**ROBERT F. PONTE**

| | |
|---|---|
| **Attorney at Law** | **220 West Middle Street**<br>**Chelsea, Michigan 48118**<br>**(734) 475-9191** |

September 8, 2009

Chase Card Services
P.O. Box 15298
Wilmington, DE  19850-5298

     *re:*   *# 4417 1288 8021 4604*

Office personnel:

My current statement of account more than doubles my minimum payment.  Today I had disappointing conversations with several Chase employees.  Through its employees Chase wants to change our agreement to its benefit and to my detriment.  I cannot afford to more than double my payment.

Chase proposes to rewrite my fixed rate contract to 7.9%.  Unless I agree, Chase says it can unilaterally increase my minimum payment.  If Chase can do that, it can demand full payment as my minimum payment and our fixed rate agreement meant nothing to Chase, only to me.

When I told the "supervisor" Chase eventually shuffled me to, after getting back to customer service from the hardship department, I told her I cannot afford to more than double my payment.  She responded that since I could pay my minimum payment every month, I must be able to afford to pay.  I resent Chase's cruel response to my hardship.  If, in order to convince Chase that I cannot afford it, I must fail to make my more than doubled minimum payment, however, regretfully I will do so.  I regret that Chase is unable to afford to honor its agreements, but I cannot afford to renegotiate our agreement in order to fix Chase's balance sheet.

Your immediate response is sincerely appreciated.

Sincerely,

Robert  F.  Ponte

Tuesday, December 27, 2011 9:06 PM

From:
"Robert Ponte" <rponteesq@sbcglobal.net>
Add sender to Contacts


To:
Info@ChaseMinPaymentLawsuit.com

I request to be excluded from In re: Chase Bank USA, N.A., Check Loan Contract Litigation.

Robert Ponte
220 W. Middle Street
Chelsea, MI  48118

Flag this message
# 2nd request: opt-out from Check Loan Class

Tuesday, January 17, 2012 12:40 PM

From:
"Robert Ponte" <rponteesq@sbcglobal.net>
Add sender to Contacts


To:
Info@ChaseMinPaymentLawsuit.com

Please confirm by your response emessage that I have successfully opted out, thanks!

--- On Tue, 12/27/11, Robert Ponte <rponteesq@sbcglobal.net> wrote:

> From: Robert Ponte <rponteesq@sbcglobal.net>
> Subject: opt-out from Check Loan Class
> To: Info@ChaseMinPaymentLawsuit.com
> Date: Tuesday, December 27, 2011, 9:06 PM
> I request to be excluded from In re:
> Chase Bank USA, N.A., Check Loan Contract Litigation.
>
> Robert Ponte
> 220 W. Middle Street
> Chelsea, MI  48118
>