UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PONTE,

                    Plaintiff,              Civil Action No. 12-cv-13901
                                            Honorable Sean F. Cox
                                            Magistrate Judge David R. Grand
      v.


CHASE BANK USA, N.A., *et al.*,

                    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [29], TO
DENY AS MOOT DEFENDANT JAMIE DIMON'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [31], AND TO DENY
PLAINTIFF'S MOTION TO AMEND COMPLAINT [42]**

**I.    RECOMMENDATION**

Pending before the Court are Defendants' Motion to Dismiss Plaintiff's Complaint for

failure to state a claim under Rule 12(b)(6) [29], Defendant Jamie Dimon's Motion to Dismiss

Plaintiff's Complaint against him for lack of personal jurisdiction [31], and Plaintiff's Motion for

Leave to File a Second Amended Complaint [42], referred to this Court for a Report and

Recommendation pursuant to 18 U.S.C. § 636(b)(1)(B).[1]   The parties presented additional

argument at a hearing held before the Court on September 3, 2013, and the matter is ready for

disposition.  For the following reasons, the Court RECOMMENDS that Defendants' Motion to

Dismiss for Failure to State a Claim [29] be GRANTED, Defendant Jamie Dimon's Motion to

Dismiss for Lack of Personal Jurisdiction [31] be DENIED AS MOOT, and Plaintiff's Motion to

_____

[1] Also pending before the Court, and addressed in a separate Order, is Plaintiff's Motion to
Compel [46].

Amend Complaint [42] be DENIED.

## II.    REPORT

### A.    Factual Background[2]

Plaintiff Robert Ponte was a Chase credit card customer.  In early 2005, Chase sent Ponte a promotional offer that allowed him to write a "check" to himself up to the unused portion of his available credit on his credit card.  The check amount would be subject to a fixed 2.99% APR until the balance was paid off.  These "check loans" were, in some ways, governed by Chase's Cardmember Agreement.  Under the terms of that agreement, Chase had the right, in the event of default, to revoke the low interest rate; otherwise the interest rate was to remain fixed.

In February 2005, Ponte entered into one of these "check loans" by writing himself a promotional check in the amount of $30,300.00, payable at a fixed interest rate of 2.99%.  The loan offer Ponte accepted indicated that his interest rate could not be changed or increased, unless he defaulted.  From the time of acceptance, until approximately September 2009, Ponte made regular payments on this loan and was not in default.  The reasonable inference drawn from his complaint is that, during that period, the monthly invoices he received indicated that a minimum payment of 2% of his outstanding balance was due.  In September 2009, Ponte received a monthly statement which indicated that his minimum payment amount on the loan had changed.  Instead of paying a minimum payment of 2% of his outstanding balance, Chase now required that Ponte pay a minimum payment of 5% of that balance.[3]  After reviewing this

---

[2] Because the District Court ordered that the pending motions to dismiss be assessed in light of Ponte's proposed amendments, [39], the following facts, which the Court must assume to be true at this stage, come from Ponte's Second Amended Complaint.

[3] Ponte repeatedly claims this increased his minimum payment "by 150%." (*E.g.*, 2nd Am. Cplt. ¶32).  However, it is worth noting that, at least on a cash basis, this is only an accurate statement in the first month of the change.  In each successive month, the cash payment differential would decrease because the 5% minimum payment would be applied to an ever decreasing outstanding

statement, Ponte contacted Chase's customer service department by telephone and was informed

that he "would be subjected to these changes going forward unless he either: (1) paid off his loan

balance in full; or (2) agreed to transfer his entire loan balance to an interest rate of 7.99% APR,"

which was ultimately variable.  (2nd Am. Cplt. ¶38).  Subsequent to this conversation, Ponte

wrote a letter to Chase contesting the increase in his monthly payment amount and the alternative

options presented to him.  His letter dated September 8, 2009, stated:

> My current statement of account more than doubles my minimum
> payment.  Today I had disappointing conversations with several Chase
> employees.  Through its employees Chase wants to change our agreement
> to its benefit and to my detriment.  I cannot afford to more than double my
> payment.
>
> Chase proposes to rewrite my fixed rate contract to 7.9%.  Unless I agree,
> Chase says it can unilaterally increase my minimum payment.  If Chase
> can do that, it can demand full payment as my minimum payment and our
> fixed rate agreement meant nothing to Chase, only to me.
>
> When I told the "supervisor" Chase eventually shuffled me to, after
> getting back to customer service from the hardship department, I told her I
> cannot afford to more than double my payment.  She responded that since
> I could pay my minimum payment every month, I must be able to afford
> to pay.  I resent Chase's cruel response to my hardship.  If, in order to
> convince Chase that I cannot afford it, I must fail to make my more than
> doubled minimum payment, however, regretfully I will do so.  I regret that
> Chase is unable to afford to honor its agreements, but I cannot afford to
> renegotiate our agreement in order to fix Chase's balance sheet.
>
> Your immediate response is sincerely appreciated.

(Cplt. at 19).[4]  Chase allegedly never responded to his letter.

---

balance.  Indeed, because the principal balance would be decreasing more rapidly with monthly
payments of 5% of the outstanding balance, it would appear that such payments would
eventually be less than what Ponte would have paid in that same month had he been allowed to
make the 2% minimum payments each month.

[4] Ponte did not attach a copy of this letter to either his first or proposed second amended
complaint, but merely referenced the reader back to the document as attached to his original
complaint.  (2nd Am. Cplt. ¶40).

In 2009, a class action lawsuit was filed against Chase on behalf of a class of borrowers allegedly damaged by actions similar to those outlined above. *See In re: Chase Bank USA, N.A., "Check Loan" Contract Litig.*, No. 09-2032, 2011 U.S. Dist. LEXIS 51689 (N.D. Cal. May 13, 2011). Ponte, originally a member of this class, timely opted out of the class action lawsuit, which ultimately settled.

### B.    Procedural Background

On September 4, 2012, Ponte, a licensed attorney proceeding *pro se*, filed a complaint in this Court against defendants Chase Bank USA, N.A., James Dimon, Jane Elliot, Portfolio Recovery Associates, L.L.C., and a John Doe, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Truth in Lending Act ("TILA"), and the Fair Debt Collection Practices Act ("FDCPA"), as well as state law claims of breach of implied covenant of good faith and fair dealing, and violations of the Michigan Collection Practices Act and the Michigan Consumer Protection Act.

On September 25, 2012, the Court issued an Order declining to exercise supplemental jurisdiction over Ponte's state law claims. [7]. The case was stayed pending a motion to transfer it to the Multidistrict Litigation overseeing the class action, with that motion being denied on February 7, 2013. [17]. In the meantime, Ponte voluntarily dismissed defendant Portfolio Recovery Services, and subsequently entered into a stipulation dismissing defendant Jane Elliot. [15, 19]. Ponte then filed an amended complaint, dropping his FDCPA claim, but continuing to allege the state claims already dismissed by the Court. [26]. He filed a motion seeking the reinstatement of those claims, which was denied on April 8, 2013. [27, 32].

On April 5, 2013, defendant Dimon filed a motion to dismiss for lack of personal jurisdiction, and all defendants filed a motion to dismiss for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6).  [29, 30].  Ponte then moved to amend his complaint a second time "insofar as this Court may deem needed" to resolve the pending motions to dismiss.  [38]. That motion was denied, without prejudice on May 7, 2013, as the Court interpreted it as requesting an advisory opinion, and noted that Ponte had "not attached a copy of his proposed Second Amended Complaint."  [39 at 2].  The Court's Order further stated that a renewed motion and proposed amendments would be considered in tandem with the pending motions to dismiss to "determine whether the deficiencies in the complaint are cured by the proposed amendments." *Id.* at 3.  Ponte renewed his second motion to amend on May 15, 2013.  [42].  Ponte's proposed second amended complaint [42-1] asserts the following claims against Defendants: (1) RICO (18 U.S.C. §1961, et seq.); (2) Mail Fraud (18 U.S.C. §1341); (3) Wire Fraud (18 U.S.C. §1343); (4) Extortion (18 U.S.C. §1951, known as the Hobbs Act); (5) Travel Act (18 U.S.C. §1952)[5]; and (6) Truth in Lending Act ("TILA") (15 U.S.C. §1601, et seq.).

### C. Legal Standard

#### 1. *Motion to Dismiss for Failure to State a Claim*

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (*citing Twombly*, 550 U.S. at 556).  The

---

[5] Ponte asserts claims 1-5 as part of an overall RICO "cause of action."

plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 129 S.Ct. at 1949. *See also*, *Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949.

Although proceeding *pro se*, because Ponte is a licensed attorney practicing in this District, his complaint is not entitled to the liberal construction generally afforded to the pleadings of *pro se* plaintiffs. *See Sabeti v. Maron*, No. 12-2392, 2012 U.S. Dist. LEXIS 78082, *4 (E.D.N.Y. June 4, 2012) (practicing attorney's complaint not entitled to liberal *pro se* construction); *Foulke v. Va. State Police*, No. 12-00006, 2012 U.S. Dist. LEXIS 33816, *1 n.1

(W.D. Va. March 13, 2012) (active member of Virginia bar's complaint not entitled to extra measure of liberal construction); *Zanke-Jodway v. Capital Consultants, Inc.*, No. 08-930, 2010 U.S. Dist. LEXIS 19137, *4, *23 (W.D. Mich. March 3, 2010) (attorney proceeding *pro se* is presumed to be aware of the rules of federal procedure).

### 2.   *Motion to Dismiss for Lack of Personal Jurisdiction*

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the Court's jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *see also Children's Legal Services, PLLC v. Shor Levin and Derita, PC*, 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Children's Legal Servs.*, 850 F. Supp. 2d at 679 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). An evidentiary hearing may be conducted "if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution," in which case plaintiff would be required to "show by a preponderance of the evidence that jurisdiction exists." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1998).

However, where the Court finds no need for an evidentiary hearing, as in the present case, "the burden of the plaintiff is relatively slight, and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Children's Legal Servs.*, 850 F. Supp. 2d at 679 (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (internal quotations and citations omitted)); *see also Nationwide Mutual Insurance Co. v. Tryg Int'l Insurance Co.*, 91 F.3d 790, 792-93 (6th Cir. 1996) (quoting

with approval *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 987 (6th Cir. 1992) (Boggs, J., dissenting) ("[A] showing by a preponderance of the evidence is not necessary unless the trial court conducts an evidentiary hearing.")); *Neogen Corp.*, 282 F.3d at 887. This burden can be met by establishing sufficient contacts in the forum state with reasonable particularity. *Neogen*, 282 F.3d at 887. Dismissal in this procedural posture is proper if all the facts plaintiff alleges fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

### 3.    *Motion to Amend Complaint*

A party may amend its pleading once as a matter of course within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend only with the opposing party's written consent or the court's leave, which should be freely given. Fed. R. Civ. P. 15(a)(2). However, a court should deny a motion to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't. of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993).

### D.    **Analysis**

### 1.    *Motion to Dismiss for Failure to State a Claim/Motion to Amend*

Defendants move to dismiss Ponte's complaint alleging that he has failed to state a claim

for either a RICO or TILA violation.  The Court agrees.[6]

> ### a.  RICO

Ponte alleges violations of all four separate RICO provisions, 18 U.S.C. § 1962(a)-(d).

Section 1962(a) makes it

> unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through the collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

In order to state a claim under this provision, a plaintiff must show "that he was injured as a result of the investment of racketeering income."  *Elkin v. Chapman*, 36 Fed. Appx. 543, 544 (6th Cir. 2002).  Section 1962(b) makes it "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  In order to state a claim under §1962(b), Ponte must plead "facts tending to establish" that Defendants "(1) acquired or maintained (2) through a 'pattern of racketeering activity; or the 'collection of an unlawful debt (3) an interest in or control of an enterprise (4) engaged in, or the activities of which affect, interstate or foreign commerce."  *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 321-22(6th Cir. 1999).

Section 1962(c) makes it "unlawful for any person employed by or associated with any

---

[6] Because the District Court held that the pending motions to dismiss would be addressed in light of Ponte's proposed amendments (*see* 2nd Am. Cplt.), the Court analyzes the motions in that manner.  However, the Court notes that Ponte's proposed Second Amended Complaint only makes changes to his general facts and the substance of his RICO claims, but does not make any changes to the substance of his TILA claims.

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."   In order to state a RICO claim under this section, Ponte must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."   *Nat'l Bev. Sys. V. Leonard Fountain Specialties, Inc.*, No. 12-10658, 2012 U.S. Dist. LEXIS 87457, at *17 (E.D. Mich. June 25, 2012) (*citing Kenty v. Bank One*, 92 F.3d 384, 389 (6th Cir. 1996)).

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)."

The above listed elements make clear that no matter which subsection Ponte proceeds under, he "must plead facts establishing that the defendants have either attempted to collect an unlawful debt as defined by the RICO statute or engaged in a pattern of racketeering activity." *Estate of Wyatt v. WAMU*, 09-14919, 2012 U.S. Dist. LEXIS 37128, *16 (E.D. Mich. Mar. 20, 2012).  This he cannot do.

RICO defines an unlawful debt as

> a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (b) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).  There are no factual allegations in Ponte's first or proposed second amended complaint to support a claim that defendants were attempting to collect an unlawful debt when they changed the terms of his check loan.  Ponte's debt is not alleged to be connected

10

in any way to gambling activity, nor has he alleged that the debt is unenforceable under state or federal usury laws.  18 U.S.C. § 1961(6); *Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, No. 09-14919, 2012 U.S. Dist. LEXIS 37128, *16-18 (E.D. Mich. Mar. 20, 2012).  He has only alleged that his initial interest rate was 2.99% and the alternate rate suggested to him, if he decided not to continue with making payments of 5% of his outstanding balance, was 7.99% and adjustable.  The statutory interest cap in Michigan is 25%.  *Mich. Comp. Laws* § 438.31c(2), (4). Therefore, Ponte has failed to state a claim under RICO that Defendants attempted to collect an unlawful debt.

Ponte has also failed to allege a pattern of racketeering activity, which requires that he allege at least two predicate acts (although the Court notes that simply pleading two acts may not be sufficient).  *Estate of Wyatt*, 2012 U.S. Dist. LEXIS 37128 at *18 (citing *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008)).  Predicate acts include "any act or threat involving . . . extortion," mail fraud, wire fraud, counterfeiting, money laundering and the use of interstate or foreign travel or transportation in aid of racketeering enterprises (*i.e.* the Travel Act).  18 U.S.C. § 1961(1).  In his complaint he has alleged violations of mail and wire fraud (18 U.S.C. §§ 1341; 1343), as well as extortion and violation of the Travel Act, 18 U.S.C. §§ 1951, 1952.  However, as discussed below, none of those allegations support a RICO claim.

### i.      *Mail and Wire Fraud Allegations*

In order to state a claim for mail fraud, Ponte must allege "(1) a scheme to defraud, and (2) the use of the mails in furtherance of the scheme."  *Heinrich v. Waiting Angels Adoption Servs.* 668 F.3d 393, 404 (6th Cir. 2012) (quoting *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005)).  "The elements of wire fraud are essentially the same except that the wires, rather than the mails, must be used in furtherance of the scheme to defraud."  *Id.* (citing *United*

*States v.* Daniel, 329 F.3d 480, 486 n.1 (6th Cir. 2003)).  Mail fraud and wire fraud, as predicate acts based on fraud, are subject to the heightened pleading standards of Federal Rule of Procedure 9(b).  Thus, in order to state a claim for mail or wire fraud, Ponte must allege, at a minimum, "the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations."  *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001).

Here, Ponte's complaint and his proposed amendments fail to state a claim for mail or wire fraud, not due to a lack of specificity, but due to a lack of a substantive element, namely a misrepresentation of fact.  In order to state a claim for fraud, Ponte must, at a bare minimum, allege that Defendants made a misrepresentation of fact, an element of scienter, and an element of justifiable reliance.  *Blount v. Fin. Services, Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 153 (6th Cir. 1987) ("[T]o establish a scheme to defraud . . . there must be proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension.").  Ponte appears to allege a "misrepresentation" by Chase when it made him the 2.99% fixed rate loan, and when it later changed Ponte's minimum monthly payment from 2% to 5% of the outstanding balance of that loan.  (2nd Am. Cplt. ¶50(a)-(d). Regarding the latter, Ponte alleges that Chase "misrepresented the interest rate, at a figure that, in Ponte's case, more than doubled the interest rate on his 'for the life' loan."  (*Id.* ¶50(d)). However, Ponte's other allegations, and the exhibits attached to his complaint, contradict his assertions.

Notably, Ponte never alleges that Chase represented to him in its promotion or at another point in time that the minimum monthly payment on his check loan would never increase.  Nor

12

does he otherwise allege that Chase was not permitted under the terms of the loan to modify his minimum monthly payment amount.  And, he specifically admits that the check loans were "governed by the cardholder agreement in some respects."  (2nd Am. Cplt. ¶4).[7]  Nor does his complaint ever allege that Chase changed his actual *interest rate*.  Rather, he alleges that Chase increased his monthly *minimum payment amount* from 2% to 5% of the outstanding balance – with his balance continuing to accrue interest at *the same 2.99% rate* that had applied all along. It was only if Ponte was unwilling to make the 5% minimum monthly payments that he was advised a different interest rate would be applied.  (2nd Am. Cplt. ¶¶36-38).  Finally, Ponte fails to allege that Chase forced him to move his check loan balance to the higher interest rate program – it was his choice how to proceed, and that choice was not illusory, as Ponte had an option by which he could have maintained the 2.99% fixed rate.  Thus, Ponte has identified no misrepresentation in Chase's initial check loan offer, and Chase's mere advising Ponte of his options if he chose not to make the 5% minimum monthly payments necessary to maintain the 2.99% rate did not misrepresent anything.

Ponte's allegations regarding Chase's actions as to other alleged "victims" of this "scheme" do not change the analysis.  Indeed, they further contradict his claim that Defendants' initial statement was a misrepresentation.  According to Ponte's complaint, notices sent out to other check loan customers to inform them of the minimum payment changes specifically stated that "Your APRs will not be impacted by these changes."  (2nd Am. Cplt. ¶35).

---

[7]  In fact, neither party attached a copy of the applicable cardholder agreement in this case, despite the fact that both parties refer to its terms in their pleadings and papers.  This fact was pointed out by the Court at oral argument.  Regardless, it appears that the parties agree that the relevant terms of the applicable cardholder agreement were articulated by the District Court that handled the class action suit from which Ponte opted out.  *In re: Chase USA, N.A.*, 2009 U.S. Dist. LEXIS 108636, *10-11 (N.D. Cal. Nov. 20, 2009).  Those terms outlined that the minimum payment amount on the account was 2% of the outstanding balance, but acknowledged that Chase reserved the right to change any terms of the agreement with proper notice.  *Id.*

Finally, the letter Ponte sent to Chase purporting to dispute these changes belies his allegations of misrepresentation.  In that letter, he reiterates that the changes made to his account involved the amount of his minimum payment only, not his interest rate, and that he could maintain the original interest rate by making the new minimum monthly payments.  (Cplt. p. 19).

Because Ponte's factual allegations demonstrate that Chase's: (1) initial offer of a 2.99% interest rate "for the life of the loan" and (2) subsequent representations about Ponte's new minimum monthly payment and options if he chose not to make that payment were not misrepresentations, his claims for mail and wire fraud fail as a matter of law.  *Albert v. Fair Assoc.*, No. 12-11812, 2013 U.S. Dist. LEXIS 9515, *22 (E.D. Mich. Jan. 24, 2013) ("a plaintiff cannot maintain a civil RICO claim based on mail or wire fraud absent evidence that the defendants made misrepresentations or omissions of material fact to the plaintiff") (quotations and citations omitted).[8]

### ii.     Extortion and Travel Act Allegations

Ponte has also failed to state a claim under either 18 U.S.C. §1951 (extortion/Hobbs Act) or §1952 (Travel Act).  "A plaintiff claiming a Hobbs Act violation of extortion as a predicate act in a civil RICO claim must establish that the defendant obstructed, delayed, or affected commerce or the movement of any article or commodity in commerce, by extortion or attempted

---

[8] It is worth mentioning here that Ponte has also failed to sufficiently allege a scienter element. While his complaint alleges that Defendants knew at the time they made the representation that it was false, (2nd Am. Cplt. ¶50(a)-(j)), his complaint also alleges that it was only after Chase discovered that the check loans were underperforming that they decided to "unilaterally and unfairly" change the payment terms in order to "squeeze additional funds" from customers.  (2nd Am. Cplt. ¶31; *see also id.*, ¶10 (incorporating by reference Ponte's letter, *supra*, which asserts that Chase changed the minimum monthly payment because it became "unable to afford to honor its agreements" and wished to "fix its balance sheet" at that time)).  The Court also notes that according to inferences drawn from Ponte's complaint, and confirmed in briefing and at argument, Chase kept the minimum monthly payment constant for approximately four and a half years, which belies an assertion that Chase intended, at the time it made the offer, to make a material misrepresentation.

14

or conspired to do so, or committed or threatened physical violence to any person or property in furtherance of a plan or purpose to do so." *Heinrich*, 668 F.3d at 406-407 (quotations and citations omitted).  Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id.* quoting 18 U.S.C. § 1951(b)(2).  Fear of economic harm can be sufficient under a claim of extortion.  *Id.*  However, to properly state such a claim, Ponte must allege "facts and circumstances that show (1) that the defendants obtained [Ponte's] property (2) through wrongful use of (3) threats or fear of physical or economic harm."  *Id.*  He has failed to do so here.

Ponte alleges that the "property" that was taken from him was the interest portion (at 2.99%) of his monthly payments over the course of four and a half years prior to the change in his payment terms.  However, by Ponte's own admission, the money upon which that 2.99% interest rate was based was a loan given to him by Chase, that he, in exchange, willingly agreed to pay back (and was paying back) with interest.  Drawing reasonable inferences from Ponte's complaint, he wanted to and would have continued to pay 2.99% interest on his loan until it was paid off, but for Chase's decision to increase his minimum monthly payment percentage.

Ponte's allegation that Chase threatened him by threatening his "good credit" if he did not pay the 5% minimum monthly payment – still with a 2.9% interest rate – is not a sufficient threat on which to premise a claim of extortion.  It is within a creditor's rights to threaten to report a customer to a credit agency for non-payment of debts, and its doing so is not an extortionate act.  *See Owens v. Riley*, No. 11-1392, 2012 U.S. App. LEXIS 4560, *8 (6th Cir. Jan. 6, 2012) (threat to report a debt to a credit-reporting agency not sufficient to sustain a civil extortion action in Michigan).  Since Ponte was not being threatened to do something that he did

not otherwise have an obligation to do under the terms of the loan contract and cardholder agreement – namely make minimum monthly payments of 5% of the balance on his loan at a 2.99% interest rate (or select and adhere to one of the other options presented to him) – no unlawful "threat" is presented by his allegations.  Accordingly, Ponte's claim for extortion must fail.

Because Ponte's allegations do not state a claim for extortion, his claim under 18 U.S.C. § 1952, which is premised on extortion, must also fail.  *See Star Waste Servs., LLC v. U.S. Waste, LLC*, 2008 U.S. Dist. LEXIS 38844, *22-23 (W.D. Tenn. 2008) ("To violate §1952, a plaintiff must show an underlying unlawful act constituting . . . (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States . . .").[9]

Ultimately, Ponte's allegations appear to be an attempt to fit the square peg of a fairly straightforward contractual dispute (albeit one that may have similarly affected many thousands more consumers) into the round hole of a civil RICO claim.  Courts have repeatedly discouraged these kinds of pleadings, noting that RICO was not intended to apply to even common law fraud, let alone something less than that.  *See RxUSA v. Capital Returns, Inc.*, 2007 WL 2712958 (E.D. Wis. 2007) ("RICO was not intended 'to fit a square peg in a round hole by squeezing garden variety business disputes into civil RICO actions.'") *citing Midwest Grinding Corp. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992); *Craig Outdoor Advertising v. Viacom*, 528 F.3d 1001, 1029 (8th Cir. 2008) ("RICO was not intended to apply to 'ordinary commercial fraud'"); *Knapp v. Patel*, 1992 WL 415384 (citing *Marshall-Silver Construction Co. v. Mendel*, 894 f.2d 593, 597 (3d Cir. 1990) (RICO not intended to apply to "garden variety" fraud accomplished through a

---

[9]  Since Ponte's complaint so clearly fails to allege even one, let alone two or more, predicate acts, his RICO claim must fail as a matter of law, and the Court need not address the questions of whether he has sufficiently pleaded the other elements of a RICO claim, *i.e.* the existence of an enterprise, or a pattern of racketeering activity.

16

series of wire or mail fraud acts).  Accordingly, Ponte's RICO claims should be dismissed.

*b.*    *TILA/FCBA*

Ponte's remaining claim, for violation of the TILA, also fails to state a claim upon which relief can be granted.[10]   While he alleges a violation of the entire TILA statute ("15 U.S.C. §1601, et seq." (2nd Am. Cplt, Second Cause of Action – "Violation of TILA, 15 USC § 1601, et seq.")), it appears from the nature of his allegations that he is claiming violation of TILA's disclosure provisions and its billing error resolution provisions (encompassed in the Fair Credit Billing Act ("FCBA") (15 U.S.C. § 1666)), which govern a creditor's obligations when faced with correspondence from a customer alleging a billing error.

*i.*    *Disclosure Requirement*

"TILA requires that creditors make certain disclosures as to the terms of lending arrangements and provides for civil liability for failure to comply with its provisions."  *Coyer v. HSBC Mortg. Servs.*, 701 F.3d 1104, 1109 (6th Cir. 2012).  Ponte alleges violation of TILA's disclosure requirements in that his loan offer did not contain required disclosures related to "rate change information regarding minimum payment and interest..."[11]   (2nd Am. Cplt. ¶60).  He further alleges that in about November 2008, notices were mailed to some customers, and included in customers' monthly statements, notifying them that the minimum payment term of their loans had changed from requiring a payment of 2% of the loan balance to 5% of the loan balance.  (*Id.* at ¶32).  Ponte received this notice in his monthly statement of September 2009.

A reading of Regulation Z, (12 C.F.R. § 226 *et.seq.*), suggests that Ponte is attempting to

---

[10] Ponte did not make any changes to this claim between his first and proposed second amended complaints.

[11] As noted above, the portion of this allegation related to the interest rate misses the mark because it is undisputed that, although Chase sought to increase Ponte's minimum monthly payment, his interest rate would remain the same if he made those payments.

allege a violation under the rules set forth in §226.9, which regulation governs the subsequent disclosure requirements of open-end credit agreements after those agreements have been entered into. This regulation requires, in pertinent part, that where a creditor offers checks that access a credit card account (which appears to be the case here, as Ponte alleges he was permitted to write this check up to the credit limit of his card), (2nd. Am. Cplt. ¶ 3; *see also* Dkt. 38-1), certain disclosures must be made, including what the promotional rate is, when that promotional rate ends, what rate applies after the promotional rate ends, any transactional fees, and whether or not a grace period applies. 12 C.F.R. § 226.9(b)(3)(A)-(C).

Ponte has not alleged a violation of this provision, however, because he has not alleged that the required disclosures were not made to him in the promotional information he received. In fact, his complaint specifically states that he was made aware of the promotional interest rate (2.99%) and the duration of that rate (fixed, for the life of the loan). (2nd Am. Cplt. ¶28; Dkt. 38-1). To the extent Ponte's claim rests on Chase's alleged failure to disclose minimum payment information in the loan offer, that argument fails. There is no requirement that the creditor disclose, at this time, the minimum payment amount or percentage. *Van Slyke v. Capital One Bank*, No. 07-00671, 2007 U.S. Dist. LEXIS 64015, *14 (N.D. Cal. 2007) ("Regulation Z requires disclosure of many items of information regarding a credit card agreement, but not a minimum payment or how any minimum payment is calculated.") (*citing* 12 C.F.R. §§ 226.5, 226.6, 226.7). Thus, Ponte cannot sustain a claim on Chase's failure to disclose this term at the time of the promotion.

### ii.    *FCBA Allegations*

Ponte's remaining TILA allegation is that Chase failed to respond to his September 2009 letter that he claims was notice of a "billing error." The FCBA, an amendment to the TILA,

"set[s] forth the procedures to be followed when a creditor receives notice from a consumer of an alleged billing error in the consumer's credit card account." *Burnstein v. Saks Fifth Avenue & Co.*, 208 F. Supp. 2d 765, 772 (E.D. Mich. 2002) *aff'd* 85 Fed Appx. 430 (6th Cir. 2003); *see also* 15 U.S.C. § 1666-1666i. The FCBA "imposes specific requirements for the 'time and contents' of the notice of billing error provided by the obligor, as well as the procedure to be followed by creditors upon receipt thereof." *Langenfeld v. Chase Bank USA N.A.*, 537 F. Supp. 2d 1181, 1192-93 (N.D. Okla. 2008) (citing 15 U.S.C. § 1666(a)). An obligor must provide written notice of the error to the creditor within sixty days of the creditor's transmission of the allegedly erroneous statement. 15 U.S.C. § 1666(a). This written notice must:

> (1) set[] forth or otherwise enable[] the creditor to identify the name and account number (if any) of the obligor,
>
> (2) indicate[] the obligor's belief that the statement contains a billing error and the amount of such billing error, and
>
> (3) set[] forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error . . .

*Id.* Furthermore, what constitutes a "billing error" is fairly circumscribed:

> (b) Billing error. For the purpose of this section, a "billing error" consists of any of the following:
>
> (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
>
> (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.
>
> (3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.
>
> (4) The creditor's failure to reflect properly on a statement a

19

payment made by the obligor or a credit issued to the obligor.

(5) A computation error or similar error of an accounting nature of the creditor on a statement.

(6) Failure to transmit the statement required under section 127(b) of this Act [15 USCS § 1637(b)] to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Bureau.

15 U.S.C. § 1666(b).  If the written notice provided by the obligor satisfies both the content and timeliness requirements, "then a creditor must follow the procedures outlined in § 1666(a)(3)(A) and (B), which include, *inter alia*, a written correction of the billing error or explanation of why the billing error was not corrected ('Compliance Duties').  If the written notice provided by the obligor does not satisfy [both requirements], the creditor's Compliance Duties are not triggered." *Langenfeld*, 537 F. Supp. 2d at 1193; *see also Conn-Burnstein v. Saks Fifth Ave. & Co.*, 85 Fed. Appx. 430, 431 (6th Cir. 2002) (holding that absent legally sufficient notice, compliance duties are not triggered such that an obligor can allege an FCBA violation).

Where a creditor has, in the face of a timely-submitted written notice of billing error, failed to respond in accordance with the statute, the obligor may sue for violation of TILA pursuant to 15 U.S.C. § 1640.  Any such cause of action must commence within one year from the date of the alleged violation. *Id.* § 1640(e).  Here, Ponte's claim fails both because his letter did not satisfy the statute's content requirement and because his FCBA/TILA claim was filed outside the applicable statute of limitations period.

Although Ponte characterizes his "notice" as alleging a "billing error" to the extent he characterizes it as "a reflection on a statement of an extension of credit for which the obligor

20

requests additional clarification," (Plf. Brf. at 18), his letter neither referenced a billing error[12]

nor raised any question for which he sought "additional clarification."  (Cplt. at 19).  Rather,

Ponte's letter simply stated that his minimum monthly payment had more than doubled, alleged

that this change was a breach of the parties' contract, and asserted that he was no longer be able

to pay his bill.  (*Id.*).  Nowhere in his letter did he state that he believed this increase in his

monthly payment to be an error.  (*Id.*).  Nor did he request that Chase provide him with the

documentation reflecting its right to change this term of the contract.  (*Id.*).  He simply sought

Chase's "immediate response" to the factual situation he described.  (*Id.*).  In sum, Ponte's letter

did not satisfy the statute's content requirement, and therefore did not trigger any compliance

duties by Chase.  *Langenfeld*, 537 F. Supp. 2d at 1193; *Conn-Burnstein*, 85 Fed. Appx. at 431.[13]

Even assuming Ponte's letter satisfied the FCBA's content and timeliness requirements,

his claim would be barred by the applicable statute of limitations.  The statute of limitations on a

TILA disclosure claim is one year from the date the disclosures were to have been issued.  *See*

---

[12] The Court notes that there is a question even whether an increase in the minimum monthly payment amount could ever constitute a "billing error" under the FCBA.  *See Esquibel v. Chase Manhattan Bank USA, N.A.*, 487 F. Supp. 2d 818, 829 (S.D. Tex. 2007) (penalties and fees do not constitute "billing error" under FCBA); *Okocha v. HSBC Bank USA, N.A.*, 2010 U.S. Dist. LEXIS 132152, *14 n.8 (S.D.N.Y. Dec. 14, 2010) (same); *Hill v. Chase Bank USA, N.A.*, 2010 U.S. Dist. LEXIS 1262, 2010 WL 107192, at * 6 (N.D. Ind. 2010) (finance charge does not constitute billing error under FCBA); *Langenfeld*, 537 F. Supp. 2d 1181 (same); *Cunningham v. Bank One*, 487 F. Supp. 2d 1189, 1195-96 (W.D. Wash. 2007) (same).  However, because the Court finds that, even if it did, Ponte's letter does not constitute sufficient notice to trigger a response from Chase, it declines to pass on the issue.

[13] Moreover, the dispute set forth in Ponte's letter is not the type Congress sought to address when enacting the FCBA.  *See Williams v. Cawley*, No. 03-10189, 2005 U.S. Dist. LEXIS 35598 (E.D. Mich. Mar. 30, 2005) *adopted by* 2005 U.S. Dist. LEXIS 3576, *27-28 (E.D. Mich. Apr. 26, 2005) (finding that obligor failed to comply with content requirement of FCBA where communication did not dispute specific transactions in account but merely sought verification of entire debt); *Knobbe v. Bank of Am., N.A.*, No. 08-489, 2007 U.S. Dist. LEXIS 72298, *14 n.7 (D. Neb. Sept. 26, 2007) (commenting that letter requesting affidavit that bank was adhering to accepted accounting practices did not qualify as a billing error despite letter's statement that it was "hereby disput[ing] the alleged debt").

15 U.S.C. § 1640(e); *MacDermind v. Discover Fin. Servs.*, 488 F.3d 721, 734 n.3 (6th Cir. 2007).   Under the FCBA, a creditor who is obliged by statute to respond to a written notice of billing error must (1) within thirty days of receipt of the notice acknowledge the notice in writing, and (2) within two complete billing cycles either correct or confirm the disputed charge or send written explanation or clarification (including documentary evidence) to the obligor, after investigation.   15 U.S.C. § 1666(a)(3)(A)-(B).   Therefore, whether or not Ponte's letter actually stated a billing error that triggered Chase's duty to respond, any violation of TILA would have accrued at most 90 days after Ponte sent his letter.   *See Knobbe v. Bank of Am., N.A.*, No. 08-489, 2007 U.S. Dist. LEXIS 72298, *14-15 (D. Neb. Sept. 26, 2007) (holding that bank "was required to take specified actions the date represented by the close of two of its complete billing cycles after receipt of the letter or ninety days after receipt of the letter, whichever is earlier").

Since his letter was dated September 8, 2009, Ponte's claim would have accrued no later than December 8, 2009, and under the statute of limitations discussed in the preceding section, his complaint was due by December 8, 2010.   However, Ponte did not file his complaint in this Court until September 4, 2012, almost two years after the statute of limitations on this claim expired.   Therefore, his FCBA claim based on an alleged billing error fails as a matter of law.

Ponte appears to argue that because Chase never responded to his letter, his injury never accrued and the limitations period on his FCBA claim was tolled until he filed his complaint. (Dkt. 36 at 24).   Ponte cites no case law whatsoever in support of this argument[14], and the Court finds that it fails for at least two reasons.   First, as discussed above, Chase's duty to respond was

---

[14] Ponte merely notes that 15 U.S.C. § 1666(a)(1)(A) requires a bank to respond in writing to a claimed billing error "prior to taking any action to collect the amount…"   (*Id.*) (quoting § 1666(a)(1)(A)).

never triggered because Ponte's letter failed to comply with the FCBA's content requirement. Second, it would not be reasonable to find that the statute of limitations on a FCBA claim is tolled indefinitely every time a creditor fails to respond to an obligor's written communication that did not impose a duty to respond. As outlined above, here the more sound approach is to deem the claim as having accrued at the expiration of the period within which Chase was (according to Ponte) required to respond. Since Ponte did not commence this action until more than one year beyond that date, his FCBA claim is barred by the applicable statute of limitations and should be dismissed.[15]

Because Ponte's first and proposed second amended complaints fail to state a claim upon which relief could be granted, his complaint should be dismissed in its entirety as a matter of law, and his motion for leave to amend should be denied. Furthermore, because the Court recommends dismissal of the entire complaint under Rule 12(b)(6), Defendant Jamie Dimon's motion to dismiss for lack of personal jurisdiction [31] should be denied as moot.

### E.   Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) **[29]** be **GRANTED**, Defendant Jamie

---

[15] Although not argued by Ponte, the Court notes that the pendency of the class action litigation that Ponte opted out of did not toll this limitations period, as that suit only raised a TILA claim based on a lack of disclosures, not based on a disputed billing error under the FCBA, (*see In re: Chase USA, N.A.*, 2009 U.S. Dist. LEXIS 108636 at *45-48), and Ponte makes no argument that the class could have stated such a claim. *See Weston v. AmeriBank*, 265 F.3d 366, 368-69 (6th Cir. 2001) (holding that TILA statute of limitations did not toll during pendency of class action where class neither raised nor could have raised claim in initial complaint) (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) and *Crown, Cork & Seal v. Parker*, 462 U.S. 345 (1983)). Moreover, even if it could be found that the TILA claim alleged in the original multidistrict litigation complaint was sufficiently similar as to toll Ponte's FCBA claim, at least initially, the question would still remain as to the effect on tolling of the District Court's dismissal of that claim under Rule 12(b)(6) prior to permitting the class plaintiffs to file a master class action complaint and seek class certification. *In re: Chase USA, N.A.*, 2009 U.S. Dist. LEXIS 108636 at *45-48.

Dimon's Motion to Dismiss pursuant to Rule 12(b)(2) **[31]** be **DENIED AS MOOT**, Plaintiff's Motion to Amend his Complaint **[42]** be **DENIED**, and that Plaintiff's operative complaint **[26]** be **DISMISSED**.

Dated: October 8, 2013                                    s/David R. Grand
Ann Arbor, Michigan                                    DAVID R. GRAND
                                                         United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                      s/Felicia M. Moses
                                      FELICIA M. MOSES
                                      Case Manager

Dated:  October 8, 2013